292 N.E.2d 277 (1973)
Jerome KLEINRICHERT, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 3-572A2.
Court of Appeals of Indiana, Third District.
February 9, 1973.
Rehearing Denied March 14, 1973.
*278 Robert S. McCain, Fort Wayne, for appellant.
Theodore L. Sendak, Atty. Gen., David H. Kreider, Deputy Atty. Gen., for appellee.
STATON, Judge.
STATEMENT ON THE APPEAL: Jerome Kleinrichert had been indicted for pandering.[1] He was tried by court, found guilty and sentenced to the Indiana State Prison for a period of not less than one nor more than ten years and fined $1,000.00. This sentence was later reduced to three years on probation. Jerome Kleinrichert's Motion to Correct Errors presents four questions to be considered on appeal:
1. Did the trial court commit reversible error when it granted the State's oral and unverified motion for continuance on the day that the cause was set for trial?
2. Did the trial court commit reversible error when it failed to grant the Defendant's repeated request for the complete and unedited minutes of the grand jury?
3. Was there sufficient evidence to sustain the trial court's finding of guilty?
4. Did the trial court consider the indictment as evidence of guilt?
We find no errors after examining the above questions and affirm the trial court's judgment in our opinion which follows:
STATEMENT OF FACTS: It was Halloween. It was about 5:00 o'clock P.M. when the bus pulled into the station at Fort Wayne, Indiana and Inez Bonner arrived to meet Jerome Kleinrichert. He had promised to fix her up so that she could turn some tricks. Inez Bonner was a prostitute. After failing to locate Jerome Kleinrichert at the bus station, she took a cab over to the Travelodge and registered. Around 7:30 or 8:00 o'clock P.M. that evening she met Jerome Kleinrichert at the Cat's Meow, a local night club managed by Jerome Kleinrichert. Their arrangement was that she would turn over all the money that she received from her acts of prostitution to him, and he would provide her with a car, apartment and other incidentals. She was introduced to five men that evening who were taken to her room at the Travelodge. By the early hours of the following morning, November 1, 1969, she had collected One Hundred and Twenty-Five Dollars ($125.00) which she turned over to Jerome Kleinrichert.
The Allen County Grand Jury returned an indictment for pandering against Jerome Kleinrichert on March 3, 1970. He waived arraignment and pleaded not guilty. His trial was set for December 9, 1970, but the prosecuting attorney made an oral motion *279 for a continuance. The State's principal witness against Jerome Kleinrichert had failed to appear. On March 30, 1970, Inez Bonner did appear for the State and Jerome Kleinrichert was found guilty of pandering by the trial court. He filed his motion to correct errors which raised the issues set forth below.
STATEMENT ON THE ISSUES: The four issues raised by Jerome Kleinrichert's Motion to Correct Errors are expressed as follows:
1. "THE TRIAL COURT HAD ABSOLUTELY NO AUTHORITY OR DISCRETION TO GRANT THE STATE OF INDIANA A CONTINUANCE ON THE DAY THE CAUSE WAS SET FOR TRIAL: FURTHER, THAT GRANTING THE STATE'S ORAL, UNVERIFIED MOTION WAS ABSOLUTELY REVERSIBLE ERROR.
2. "THE TRIAL COURT ERRED IN REFUSING APPELLANT DEFENDANT'S REPEATED REQUESTS FOR PRODUCTION OF A COMPLETE AND TRUE COPY OF THE MINUTES OF THE ALLEN COUNTY GRAND JURY, INSTEAD OF THE CUT AND CENSORED VERSION FURNISHED BY THE PROSECUTING ATTORNEY. APPELLANT-DEFENDANT WAS ENTITLED TO THE COMPLETE MINUTES FOR THE PURPOSES OF DISCOVERY, TO TEST THE CREDIBILITY OF THE STATE'S SOLE WITNESS AND TO OBTAIN EVIDENCE WHICH MIGHT BE FAVORABLE AND EXCULPATORY TO APPELLANT-DEFENDANT.
3. "THE DECISION OF THE TRIAL COURT IS NOT SUSTAINED BY SUFFICIENT EVIDENCE AND IS CONTRARY TO LAW. SOME OF THE RULINGS CONCERNING TESTIMONY OF WITNESSES WERE HIGHLY PREJUDICIAL AND CONSTITUTE, AS A WHOLE REVERSIBLE ERROR.
4. "THE TRIAL COURT CANNOT CONSIDER THE FACT THAT A CITIZEN WAS INDICTED IN DETERMINING HIS INNOCENCE OR GUILT."

STATEMENT ON THE LAW
ISSUE ONE: Jerome Kleinrichert's first contention of error is that:
"THE TRIAL COURT HAD ABSOLUTELY NO AUTHORITY OR DISCRETION TO GRANT THE STATE OF INDIANA A CONTINUANCE ON THE DAY THE CAUSE WAS SET FOR TRIAL: FURTHER, THAT GRANTING THE STATE'S ORAL, UNVERIFIED MOTION WAS ABSOLUTELY REVERSIBLE ERROR."
The unequivocal expression of error quoted above from Jerome Kleinrichert's Brief relies upon the interpretation of two statutes and the application of Criminal Rule 4(D). We will first discuss the interpretation of the statutes and then the application of the rule.
Inez Bonner had received a subpoena ad testificandum as a State's witness. She was the State's sole witness against Jerome Kleinrichert. A letter sent to her prior to trial had apparently been returned unopened to the prosecutor's office. On the day of the trial, December 9, 1970, she failed to appear. The prosecuting attorney moved orally for a continuance which was granted by the trial court. Jerome Kleinrichert contends that the statutes require the prosecutor to file an affidavit stating whether certain conditions exist. He further contends that no oral motion can be made or considered by the trial court. He urges that the statutory requirement for a written affidavit *280 is mandatory. His argument strongly suggests that all the vestiges of discretion which might otherwise be exercised by the trial judge in the absence of such a written affidavit by the prosecutor is non-existent. The statutes under consideration are: I.C. 1971, XX-X-XX-X; Ind. Stat. Ann. § 9-1401 (Burns 1956) and I.C. 1971, XX-X-XX-X; Ind. Stat. Ann. § 9-1402 (Burns 1956) which read as follows:
"9-1401. Motion and affidavit of accused.  A motion by the defendant to postpone the trial on account of the absence of evidence can be made only on affidavit showing materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and if the postponement be asked on account of an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring his testimony within a reasonable time. The affidavit must further show that the absence of such witness has not been procured by the act or connivance of the defendant, nor by others at his request, nor with his knowledge and consent, and what facts he believes the witness will testify to, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured. If, thereupon, the prosecuting attorney will admit that the witness, if present, will testify to the facts which the defendant in his affidavit for continuance alleges that he can prove by the absent witness, or if the evidence be written or documentary, that such documentary evidence exists, the trial shall not be postponed for that cause. The defendant shall file such affidavit for continuance at least five [5] days before the date set for trial or shall sustain the burden of establishing to the satisfaction of the court, that the defendant is not at fault for failing to file such affidavit for continuance at an earlier date. If the motion for continuance is based upon the illness of the defendant or of a witness, the motion shall be accompanied by the oral testimony, in open court, or by the written statement of a physician or hospital official having the care or custody of such defendant or witness, presenting the nature of the illness and the probable duration of his incapacity to attend trial. Such written statement of the physician or hospital official shall be sworn to by such physician or hospital official before a notary public or other officer authorized to administer an oath. The court may appoint a physician who shall examine the defendant or the witness, and shall report to the court on the nature of the defendant's illness and the probable duration of his incapacity to attend trial. Compensation for such physician shall be provided by order of the court."
"9-1402. Application by prosecuting attorney  Discharge for delay in trial  Defendant in jail.  Whenever the prosecuting attorney desires to obtain a postponement of the trial of a criminal cause on account of the absence of any witness whose name is indorsed on the indictment or affidavit, such continuance shall be granted on his official statement in manner and form as specified in the preceding section; but the defendant may require the same to be in writing. If the defendant will admit that the witness will testify to the facts which the prosecutor states he expects to prove, or, if the evidence be documentary, that such documentary evidence exists, the trial shall not be postponed for that cause. And no defendant shall be detained in jail, without a trial, on an indictment or affidavit, for a continuous period embracing more than two [2] terms after his arrest and commitment thereon; or if he was in jail at the time the indictment was found or affidavit filed, more than two [2] terms after the term at which the indictment was found or the affidavit first filed; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such terms: Provided, however, That the prosecuting attorney shall make such statement for continuance at least five [5] days before the date set for trial, or *281 shall sustain the burden of establishing to the satisfaction of the court that he is not at faul for failing to file such affidavit at an earlier date." (Our emphasis)
The above statute clearly contemplates that the prosecutor's "... official statement ..." may be oral; however, the "... defendant may require the same to be in writing... ." Criminal Rule 4(A) now provides that if the prosecutor does not make such statement ". . not later than ten [10] days prior to the date set for trial ... [he must] show additionally that the delay in filing the motion was not the fault of the prosecutor." We do not find in the record any motion by the defendant, Jerome Kleinrichert, that the prosecutor's application for a continuance be in writing. We find only an allegation that it was not made in good faith which he proposed to prove by putting the prosecuting attorney on the witness stand under oath. Therefore, the prosecutor's application for a continuance is within the statute.[2] This conclusion of law leaves only the correctness of the trial court's ruling granting the prosecutor's application for our consideration.
The record shows that the trial court had before it a subpoena which had been served personally upon the missing witness. The return shows that there was personal service by reading on June 3, 1970 and that the witness was to appear on December 9, 1970 at 1:30 P.M. Inez Bonner's address appears on the face of the subpoena. The prosecutor stated that he had just learned Tuesday, the day before, that a letter sent to the witness had been returned. The witness was represented to be the sole witness for the State and the prosecutor stated that she would testify to all the essential elements necessary to show the crime stated in the indictment. The State indicated to the trial court that it would have to dismiss if it was unable to locate the missing witness. This is sufficient to satisfy the requirement that such facts cannot be proven by any other witness. We have examined all of the statements made by Mr. Hood for the State, Mr. McCain for the Defendant and the trial court. There was no abuse of discretion by the trial court in granting the State's oral statutory motion for continuance.
December 9, 1970 had been agreed upon as a trial date by the State and the Defendant, Jerome Kleinrichert. It is contended by Jerome Kleinrichert that the granting of the State's application for a continuance was not only a violation of the statutes previously discussed, but the granting of the continuance was in violation of CR. 4(D).[3] The second trial date was set *282 for March 5, 1971 which was within the ninety days under the provisions of the rule. We further note from the record that the Defendant's attorney was not available for most of the month of February which prevented the new trial date being set earlier.[4] We find no error of the trial court upon the first issue urged by Jerome Kleinrichert.
ISSUE TWO: Jerome Kleinrichert's second contention of error is stated in his brief as follows:
"THE TRIAL COURT ERRED IN REFUSING APPELLANT DEFENDANT'S REPEATED REQUESTS FOR PRODUCTION OF A COMPLETE AND TRUE COPY OF THE MINUTES OF THE ALLEN GRAND JURY, INSTEAD OF THE CUT AND CENSORED VERSION FURNISHED BY THE PROSECUTING ATTORNEY. APPELLANT-DEFENDANT WAS ENTITLED TO THE COMPLETE MINUTES FOR THE PURPOSES OF DISCOVERY, TO TEST THE CREDIBILITY OF THE STATE'S SOLE WITNESS AND TO OBTAIN EVIDENCE WHICH MIGHT BE FAVORABLE AND EXCULPATORY TO APPELLANT-DEFENDANT."
This issue revolves around index cards kept by Inez Bonner at the request of Jerome Kleinrichert which were destroyed after trial. These cards had been in the presence of the grand jury when Inez Bonner testified. There were two boxes of cards. Some had been contained in a separate group by a rubber band since this group contained the names of men in Indianapolis. The cards contained such information as names, birthdays, fractions of One Hundred Dollars and the date when they visited Miss Bonner. Three cards were given to the trial counsel for Jerome Kleinrichert during trial. These were admitted into evidence without objection. The total amount of money represented by these cards as shown in fractions marked thereon was $125.00. No dates were on the cards. Inez Bonner testified on cross-examination that she reviewed the cards and stated, "Well, you can remember some of the guys that were there."
Jerome Kleinrichert's "Amended Motion to Produce Evidence" filed on March 1, 1971 provided at rhetorical paragraphs 2, 3, 5, 6 and 7 that:
"2. Defendant now moves to amend said motion to produce evidence in that defendant further requests the production of all records held by the State of Indiana, which reflect names and dates of acts of prostitution committed by State's material witness Inez Bonner, which said records may also reflect an amount of money received for said acts of prostitution.
"3. That the indictment for pandering returned against defendant by the Grand Jury on March 3, 1970, in this cause of action, charges the defendant, Jerome J. Kleinrichert, with having `unlawfully, feloniously and knowingly, without lawful consideration, take, accept and receive money, to-wit: One Hundred Twenty-five Dollars ($125.00), from a female person, to-wit: Inez Bonner, from the earnings of her prostitution . ..'.
* * * * * *
"5. That defendant now has reason to believe that this same said file card record has been turned over and given to the Prosecuting Attorney of Allen County, Indiana, and that the said Prosecuting Attorney does have this same file card record in his possession at this time.

*283 "6. That because the indictment for pandering against defendant specifically charges him with having received the amount of $125.00 from the earnings of Inez Bonner, as a prostitute, on or about November 1, 1969, defendant has a special need for production of the prostitution records kept by Inez Bonner and now held by the Prosecuting Attorney of Allen County.
"7. That the aforementioned prostitution records of Inez Bonner are the very basis for the indictment against defendant in that no other evidence was presented to the Grand Jury so as to substantiate the charge of the defendant having received $125.00 from the said Inez Bonner from her prostitution earnings on or about November 1, 1969."
This motion is unnecessarily broad and all inclusive. It requests "all records held by the State of Indiana, which reflect names and dates of acts of prostitution committed by the State's material witness Inez Bonner, which said records may also reflect amounts of money received for said acts of prostitution." The motion does not request the testimony of Inez Bonner before the Grand Jury. Jerome Kleinrichert had taken her deposition before trial. Five men had visited Inez Bonner on the night of October 31, 1969 and the morning of November 1, 1969. She testified on direct examination to the names of three men that she remembered and the amounts received. The names and amounts testified to on direct examination agreed with the cards which were offered into evidence and admitted without objection as "Defendant's Exhibits B, C and D." One question on cross-examination suggests that perhaps there were two hundred cards in the boxes. Inez Bonner testified that she did not know how many cards existed.
Rhetorical Paragraph Six of the motion above alleges that Jerome Kleinrichert "... has a special need for production of the prostitution records ...", but there is a complete void of any explanation which might disclose the nature of the "special need." We note that there was no renewed motion which specifically requested the cards reviewed by Inez Bonner to determine the names or amounts before, during or after her testimony to the Grand Jury. Nor, was there any attempt by Jerome Kleinrichert to obtain cards containing dates within a reasonable time period before or after the date alleged in the indictment. Any reasonable foundation for impeachment purposes is absent. The bulk of the card file contained matters which were not related to the matters covered in Inez Bonner's direct testimony. The State did not wish to reveal the unrelated bulk of cards.[5] Three *284 of the cards were handed to Jerome Kleinrichert's defense counsel who offered them into evidence as Defendant's exhibits. If Jerome Kleinrichert was not satisfied with this cut of the cards, he should have requested a hearing. Having failed to request a formal hearing, he has waived any error which may have resulted from the trial court's ruling on his motion. In Yeary v. State (1971), Ind., 273 N.E.2d 96, the Defendant's counsel requested the production of a statement given to the police by the prosecuting witness. Our Supreme Court held in an opinion written by Chief Justice Arterburn that there was no error where the defendant's counsel failed to request a hearing. Chief Justice Arterburn's opinion in Yeary, supra, 273 N.E.2d at 99, 100, stated:
"... During cross examination by the appellant's counsel of the prosecuting witness, she testified that she had made a statement to the police concerning the alleged rape. Upon appellant's motion, the court ordered the prosecution to produce the statement. The prosecution did not produce the statement, alleging that it had no such statement. The appellant did not request a hearing on the existence of the statement, as to whether or not the prosecuting attorney had in his possession or under his control such a statement... ."
See also Auer v. State (1972), Ind. App., 289 N.E.2d 321. We find no error in the ruling of the trial court which denied Jerome Kleinrichert's motion to produce.
ISSUE THREE: Jerome Kleinrichert's third contention of error circumscribes the propositions of sufficiency of the evidence and the suggestion that the trial court abused its discretion when it sustained objections made by the State. Issue Three has been expressed by Jerome Kleinrichert as follows:
"THE DECISION OF THE TRIAL COURT IS NOT SUSTAINED BY SUFFICIENT EVIDENCE AND IS CONTRARY TO LAW. SOME OF THE RULINGS CONCERNING TESTIMONY OF WITNESSES WERE HIGHLY PREJUDICIAL AND CONSTITUTE, AS A WHOLE REVERSIBLE ERROR."
The "entire failure of credible evidence ..." complained of by Jerome Kleinrichert in his Brief refers to conflicting testimony and testimony of his witnesses which tends to impeach the State's sole witness, Inez Bonner. This argument is with the weight to be given the testimony of the witnesses which lies in the province of the trier of the facts. In Baynard v. State (1972), Ind., 286 N.E.2d 844, 845, Justice Prentice, speaking for the Supreme Court, stated:
"... This Court, on appeal, will not weigh the evidence nor determine the credibility of witnesses; and when the sufficiency of the evidence is raised as an issue upon appeal, we will consider only that evidence most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. The conviction will be affirmed if, from that viewpoint, there is substantial evidence of probative value from which the trier of the facts could reasonably infer that the appellant was guilty beyond a reasonable doubt... ." (citations omitted)
Jerome Kleinrichert was charged by indictment with pandering. The statute, I.C. 1971, XX-XX-X-X; Ind. Stat. Ann. § 10-4226 (Burns 1972 Supp.), provides:
"Any person who shall knowingly, without lawful consideration, take, accept or receive money or other thing of value from any female person from the earnings of her prostitution, or any person who shall, directly or indirectly, take, receive or accept money or other thing of value for providing, procuring or furnishing *285 for another any person for the purpose of illicit sexual intercourse, shall be guilty of pandering, ... ."
Inez Bonner, the State's sole witness, testified:
"Q. Now, I'll ask you, did you in fact turn money over to Mr. Kleinrichert from your acts of prostitution?
"A. Yes.
"Q. And, did you turn money over to him in the early morning hours of November 1st, 1969?
"A. Yes.
"Q. How much money did you turn over to him?
"A. one, twenty-five ($125.00).
"Q. And, what was this money from?
"A. Prostitution."
We have reviewed the above testimony as well as the testimony given by all of the witnesses as set forth in the record. There is substantial evidence of probative value from which the trier of fact could have reasonably inferred that Jerome Kleinrichert was guilty beyond a reasonable doubt of pandering.
The trial court sustained the State's objection to attempts by Jerome Kleinrichert to prove that the Fort Wayne Police Department was subsidizing Inez Bonner and that there was an arrest warrant out for her. There has been a failure on the part of Jerome Kleinrichert to show a clear abuse of discretion by the trial court in sustaining the State's objection to these matters. We must presume that the trial court did not abuse its discretion in such rulings and can only reverse "where it appears that such discretion has been abused to the injury of the complaining party." The Cerealine Manufacturing Company v. Bickford (1891), 129 Ind. 236, 240, 28 N.E. 545, 546. See also Hartsfield v. State (1950), 228 Ind. 616, 622, 94 N.E.2d 453; Way v. State (1946), 224 Ind. 280, 290, 66 N.E.2d 608; and Peak v. State (1960), 240 Ind. 334, 340, 163 N.E.2d 584.
ISSUE FOUR: The fourth issue is predicated upon these remarks of the trial court at the close of all the evidence:
"... The prosecuting witness, Inez Bonner, appeared before the Grand Jury under oath and told her story. The prosecuting witness, Inez Bonner, appeared in this Court under oath and told her story."
Jerome Kleinrichert's fourth contention of error is:
"THE TRIAL COURT CANNOT CONSIDER THE FACT THAT A CITIZEN WAS INDICTED IN DETERMINING HIS INNOCENCE OR GUILT."
The authority cited by Jerome Kleinrichert to support this argument, Petro v. State (1933), 204 Ind. 401, 184 N.E. 710, holds that a jury should be instructed not to consider an indictment as evidence of guilt or innocence of the defendant. Jerome Kleinrichert was not tried by a jury. He was tried by court. It is presumed that a trial judge who is sitting as the trier of facts is able to correctly determine what may be properly considered in rendering a judgment. We cannot assume prejudice or infer it from the subjective views of the trial judge. In United States v. Bolden (7th Cir.1965), 355 F.2d 453, 456, the court stated that:
"... Trial judges are invariably called upon to conduct impartial trials despite whatever opinion they may have or which they may formulate during the course of the trial concerning the guilt or innocence of an accused. Such impartiality is precisely what is expected of them, and an experienced trial judge must be assumed capable of performing his essential function. In short, prejudice must be shown by trial conduct; it may not be presumed or inferred from the subjective views of the judge."
*286 There has been no showing of prejudice on behalf of the trial judge in the present case, and we find no error.
The judgment of the trial court should be and the same hereby is affirmed.
HOFFMAN, C.J., and SHARP, J., concur.
NOTES
[1] I.C. 1971, XX-XX-X-X; Ind. Stat. Ann. § 10-4226 (Burns 1972 Supp.).
[2] It should be noted that the defendant's statutory motion for continuance "... can be made only on affidavit ..." which excludes an oral statutory motion for continuance. I.C. 1971, XX-X-XX-X; Ind. Stat. Ann. § 9-1401 (Burns 1956). This does not mean that a non-statutory oral motion for continuance cannot be made by defendant as it was in Johnson v. State (1970), 254 Ind. 465, 467-468, 260 N.E.2d 782, 784 wherein Chief Justice Arterburn speaking for our Supreme Court stated:

"The court at the time of this ruling had only the appellant's oral motion and nothing else upon which to base its ruling. When a motion for a continuance is made on other than statutory grounds or is not made in conformity with the statute, the granting of such a continuance rests within the sound discretion of the trial court, absent a clear showing of abuse of discretion." (Our emphasis)
[3] Rule CR. 4(D) reads as follows:

"(D) Discharge for delay in trial  When may be refused  Extensions of time. If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety [90] days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety [90] days, he shall then be discharged."
[4] Defendant Jerome Kleinrichert was arraigned on April 13, 1970 and released on bail. An early trial date had not been requested at any time before December 9, 1970 which was a trial date agreed upon by both the State and the Defendant's trial counsel.
[5] Antrobus v. State (1970), 253 Ind. 420, 254 N.E.2d 873, 877:

"... If the foundation is proper the trial court must grant the motion and order the statements turned directly over to the defendant unless the State alleges: (a) There are no such statements within the control of the State. The trial court must conduct a hearing on the conflicting claims of the parties to resolve this issue. (b) There is a necessity for keeping the contents of the statements confidential. (c) The statement also contains matter not related to the matters covered in witness testimony and the State does not wish to reveal that portion. In the latter two cases the statements need not be given directly to the defendant but should be given to the trial court for his decision concerning the State's claim. If the trial court agrees with the State then on (b) and (c) the trial court may deny defendant's motion or turn over to the defendant only the relevant portion of the statement."
We need not consider Bernard v. State (1967), 248 Ind. 688, 230 N.E.2d 536 for the reason pointed out by Justice Givan in his concurring opinion in Antrobus v. State, supra, 254 N.E.2d at 882:
"... I do not concur with the citing of Bernard v. State (1967), 248 Ind. 688, 230 N.E.2d 536 and Johns v. State (1968), Ind., 240 N.E.2d 60. Both of these cases stand for the proposition that it is reversible error for the State to call witnesses who names have not been furnished to defendant prior to trial. They are not necessary or authority for the decision reached herein, and therefore, should not be cited.